**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |
|---|---|
| IN RE PERSONALWEB TECHNOLOGIES, LLC, and LEVEL 3 COMMUNICATIONS, LLC PATENT LITIGATION | ) ) ) ) ) ) ) MDL DOCKET NO. 2834 |

**BRIEF OF AMAZON.COM, INC. AND AMAZON WEB SERVICES, INC. IN OPPOSITION TO MOTION FOR TRANSFER AND CONSOLIDATION OF PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

**TABLE OF CONTENTS**

I.  INTRODUCTION ----------------------------------------------------------------------------- 1

II. FACTUAL AND PROCEDURAL BACKGROUND ---------------------------------------- 2

    A.    PersonalWeb filed dozens of lawsuits against Amazon customers accusing their use of Amazon's technology ------------------------------- 2

    B.    To protect its customers and technology, Amazon filed a declaratory judgment action against PersonalWeb in the Northern District of California ---------------------------------------------------------- 4

III. ARGUMENT ---------------------------------------------------------------------------------- 6

    A.    Federal Circuit law precludes PersonalWeb from litigating against Amazon's customers until Amazon's declaratory judgment action is resolved ---------------------------------------------------------- 7

    B.    Staying the customer suits here will resolve this dispute more efficiently than transfer, which would thwart the purposes of the MDL statute by unnecessarily complicating the proceedings and wasting judicial resources ---------------------------------------------------- 12

IV. CONCLUSION -------------------------------------------------------------------------------- 15

## TABLE OF AUTHORITIES

*Cases*:                                                                                                             *Page(s)*:

*Finisar Corp. v. Cheetah Omni, LLC*,
  No. 11-cv-15625, 2012 WL 12931575 (E.D. Mich. Nov. 19, 2012) ......................... 11

*Genentech, Inc. v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993) ........................................................................................ 11

*In re Bear Creek Techs., Inc. ('722) Patent Litig.*,
  858 F. Supp. 2d 1375 (JPML 2012) ...................................................................... 6, 12–14

*In re Desloratadine Patent Litig.*,
  502 F. Supp. 2d 1354 (JPML 2007) ............................................................................... 13

*In re FMC Corp. Pat. Litig.*,
  422 F. Supp. 1163 (JPML 1976) .................................................................................... 15

*In re Google Inc.*,
  588 F. App'x 988 (Fed. Cir. 2014) ........................................................................ *passim*

*In re Method of Processing Ethanol Byproducts & Related Subsystems
  ('858) Pat. Litig.*,
  730 F. Supp. 2d 1379 (JPML 2010) ............................................................................... 15

*In re Mobile Telecomms. Techs., LLC Patent Litig.*,
  222 F. Supp. 3d 1337 (JPML 2016) ............................................................................... 15

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014) ................................................................................... 7–9

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990) ............................................................................... 6–7, 11

*Lab. Corp. of Am. Holdings v. Chiron Corp.*,
  384 F.3d 1326 (Fed. Cir. 2004) ..................................................................................... 15

*Mattel, Inc. v. Luis Marx & Co.*,
  353 F.2d 421 (2d Cir. 1965) ............................................................................................ 7

*Pragmatus Telecom, LLC v. Advanced Store Co.*,
  No. 12-088-RGA, 2012 WL 2803695 (D. Del. July 10, 2012) ...................................... 11

**STATUTES**

28 U.S.C.
  § 1292(a)(1) ................................................................................................................... 15
  § 1407 ....................................................................................................................... 13, 15

**I.      INTRODUCTION**

This is not air disaster litigation, a wave of complex product liability suits, or a mass tort. It is not even an ordinary, run-of-the-mill, patent infringement dispute. It is an unprecedented litigation campaign by a notorious patent assertion entity, PersonalWeb, against more than 50 customers of a single manufacturer—Amazon—after it sued Amazon on the same patents and lost. MDL proceedings are not intended for such wasteful and duplicative customer suits. Rather, the proper (and well-established) procedure for managing these cases is a simple stay of all suits against Amazon's customers while the true parties in interest—Amazon and PersonalWeb—resolve what is in substance, and what should become procedurally, a single patent dispute between two parties. That stay is not optional; it is mandated by an unbroken chain of controlling Federal Circuit precedent dating back to the mid-1900s. The customer suit stay is so rooted in patent jurisprudence that the Federal Circuit recently issued two separate *writs of mandamus* directing district courts to stay customer cases pending resolution of declaratory judgment actions between manufacturers and patentees. MDL proceedings are entirely unnecessary to effect this simple and non-discretionary procedural result.

To that end, all of these improper customer cases are well underway towards being stayed by a single district judge. Amazon months ago filed not only a declaratory judgment action against Personal Web and Level 3 in the Northern District of California, but a motion for preliminary and permanent relief to enjoin PersonalWeb from litigating the improper customer suits until Amazon's declaratory judgment action is resolved. At the same time, the customers have already requested stays of their cases pending resolution of Amazon's California case, or will do so shortly. The hearings on Amazon's injunction motion and stay motions filed by customers sued in California are set for April 27. Amazon fully expects to obtain the requested preliminary relief

1

if only because the law does not allow a contrary result. Consequently, soon there will be no additional, much less meaningful, work for an MDL panel (to say nothing of an MDL judge) to do. These cases inevitably (and soon) will become a single and unremarkable patent dispute—making MDL proceedings entirely unnecessary.

Indeed, once stayed, all of the customer cases will be resolved by Amazon's declaratory judgment action. That case will either (i) determine that PersonalWeb's claims against Amazon's customers are barred as a matter of law, which would compel dismissal of the customer suits; (ii) find that Amazon's technology—and thus any use of that technology by Amazon's customers—does not infringe, which would yield the same result; or (iii) find that Amazon infringes, and assess damages, which would exhaust any separate claim to damages against Amazon customers. Either way, the inefficiencies and redundancy of PersonalWeb's duplicative customer suits will be resolved by the procedures mandated by the Federal Circuit, not by an MDL proceeding. Indeed, no MDL panel has ever centralized suits over an objection that transfer would violate the longstanding customer suit doctrine. Amazon respectfully requests that the panel decline PersonalWeb's unprecedented invitation to do so here.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   PersonalWeb filed dozens of lawsuits against Amazon customers accusing their use of Amazon's technology.

In January of this year, PersonalWeb filed 55 identical lawsuits in the Northern District of California, Central District of California, Eastern District of New York, Southern District of New York, Eastern District of Texas, and the District of Delaware. The defendants are a host of disparate companies (*e.g.*, Airbnb, Bitly, Blue Apron, GoPro, Kickstarter, MyFitnessPal, Popsugar, Reddit, Spokeo, Square, Stitch Fix, Thrillist, Venmo) that do business on the Internet. (*See* Dkt.

2.)

In each complaint, PersonalWeb alleges infringement of the same five expired patents, each of which is directed to creating a unique identifier for a data object by applying a mathematical hash function to the object's content, and using that identifier to find the object in a data store.[1] And although PersonalWeb in this forum argues that the defendants infringe because they use "the same webpage architecture, namely Ruby on Rails," the admittedly identical complaints tell a different story.

Those complaints uniformly allege that the key aspect of the asserted patents and their claims—the content-based identifier—is the ETag value associated with objects uploaded to and generated solely by *Amazon's* Simple Storage Service S3. (*See* Dkt. 1-4 ("Sherman Decl., Ex. 1'") (*PersonalWeb Techs., LLC v. Airbnb, Inc.*, No. 5:18-cv-00154, complaint (N.D. Cal. filed Jan. 8, 2018)[2]) at ¶¶ 36–43, 46–52, 55–59, 62–7, 73–79.) Again, those ETags are generated by Amazon's S3, not by Ruby on Rails. (*See id.* at ¶ 23.) PersonalWeb acknowledges this critical fact in the complaints—all of which allege that the disputed ETags are "generated, on Defendant's behalf, upon upload [to S3] by applying a hash function to the sequence of bits." (*Id.*)

In its complaints, aside from a passing reference in the general allegations, PersonalWeb identifies Ruby on Rails by name in only two paragraphs of its infringement allegations for two of the five asserted patents. (*Id.* ¶¶ 56, 74.) In those paragraphs, PersonalWeb alleges that each Amazon customer has "utilized the Ruby on Rails code . . . *and* both hardware and software hosted

---

[1] U.S. Patent No. 5,978,791 ("the '791 patent"), U.S. Patent No. 6,928,442 ("the '442 patent"), U.S. Patent No. 7,802,310 ("the '321 patent"), U.S. Patent No. 7,945,544 ("the '544 patent"), and U.S. Patent No. 8,099,420 ("the '420 patent").

[2] For convenience, Amazon cites to the *Airbnb* complaint attached as Exhibit 1 to the Sherman Declaration, as exemplary of all customer complaints.

3

in the *Amazon S3* hosting system that Defendant uses to serve its content." (*Id.* (emphasis added).) PersonalWeb then maps the key limitations of the asserted claims to functionalities within "the Amazon S3 hosting system."[3]  Indeed, in its motion, PersonalWeb touts the asserted patents as "relat[ing] to pioneering concepts in cloud computing." (Mot. at 1.)  The accused Amazon S3 is a cloud storage platform (s*ee* Declaration of J. David Hadden ("Hadden Decl."), Ex. 1), while Ruby on Rails is a tool for developing web applications, not a cloud computing technology. (*See id.*, Ex. 2.)  That PersonalWeb's claims are not really about Ruby on Rails is clear from its refusal to dismiss a complaint against a customer who represented that it does not use Ruby on Rails, in part because, as PersonalWeb maintained, the customer may be using other "website architectures." (Hadden Decl., Ex. 3.)  PersonalWeb's infringement claims rise and fall with the operation of the Amazon S3 technology.

      **B.    To protect its customers and technology, Amazon filed a declaratory judgment action against PersonalWeb in the Northern District of California.**

On February 5, 2018, Amazon filed suit against PersonalWeb (and Level 3) seeking an injunction against further litigation in the customer cases and declarations that PersonalWeb's claims against the customers are barred and that, if not barred, Amazon's technology does not infringe the asserted patents.  *See Amazon.com, Inc. v. PersonalWeb Techs., LLC*, No. 5:18-cv-00767, Dkt. 1 (N.D. Cal.) ("*Amazon.com*").

As explained in Amazon's complaint, PersonalWeb's claims are barred because it already asserted four of the five patents at issue in the customer suits against Amazon itself in a Texas case

---

[3] In this forum, PersonalWeb tries to conceal the gravamen of its allegations by omitting to mention Amazon by name.  Even so, PersonalWeb's description of its claims betrays that effort: "Each defendant is alleged to have contracted with *the same third party* [Amazon] to serve its content on its behalf *using the same S3 host system* so that it may control its content distribution *in an infringement of the Patents-in-Suit*." (Mot. at 7 (emphasis added).)

4

filed in 2011. (Hadden Decl., Ex. 4 (Amended Complaint in *PersonalWeb Techs. LLC v. Amazon.com, Inc.*, No. 6:11-cv-00658 (E.D. Tex.)) at 5–6, 8–12, 14–15.)  In that case, just as in the present customer cases, PersonalWeb accused Amazon's S3.  And in that case, just as in the customer cases, PersonalWeb alleged that the infringing content-based identifier was the ETag generated by S3.  According to PersonalWeb, Amazon's S3 infringed the patents because "the hardware and software used by the Amazon S3 system" "accesses a data item in the system using the 'ETag' identifier of the data."  (Hadden Decl., Ex 5 ('791 infringement contentions for Amazon S3) at 1, 19–21, 32; *see also id.* at 22 ("Amazon S3 automatically generates a hash [ETag] to identify and retrieve the data being uploaded. . . . The hash is a substantially unique identifier for the data item, the identifier depending on and being determined using all of the data in the data item.") and 24–32 (further describing S3's creation of the ETag).)[4]  The fifth patent asserted in the customer cases, the '420 patent, is a continuation of the other four, shares the same specification, has substantially the same scope, and is limited by a terminal disclaimer.[5]  (*Id.*, Ex. 6 ('420 patent) at 1:6–14; *id.* Ex. 7 (terminal disclaimer).)

PersonalWeb's case against Amazon failed.  After extensive discovery, and after the Texas court issued its claim construction order, PersonalWeb determined that it could not succeed and

---

[4] A different feature of S3, Multipart Upload, was also at issue in the prior case.  Contrary to PersonalWeb's assertions, it was not the only accused feature there as its infringement contentions from that case, quoted above, demonstrate.  PersonalWeb also accused the same use of conditional requests made with ETags that it accuses of infringement in its identical customer cases now.  (*See* Hadden Decl., Ex. 5, '280 infringement contentions at 15 and 38; '310 infringement contentions at 56 and 74; '442 infringement contentions at 14, 20 and 43; '791 infringement contentions at 14, 35, 54, 72, 90 and 107.)

[5] Accordingly, as described in Amazon's declaratory judgment complaint, PersonalWeb's infringement claims for this patent are also barred as a matter of law.

stipulated to a dismissal of its claims with prejudice. (*Id.*, Ex. 8 (Order of Dismissal with Prejudice).) In the dismissal, Amazon expressly reserved its right to challenge validity, infringement, and enforceability of the patents-in-suit via defense or otherwise, in any future suit or proceeding. (*Id.*) PersonalWeb's abusive litigation campaign against Amazon's customers, along with Amazon's indemnification obligations to those customers, left no choice for Amazon but to invoke that reservation of right and file its declaratory judgment action. (*See Amazon.com*, Dkt No. 36 (First Amended Complaint) at ¶¶ 8, 33.)

On February 23, 2018, Amazon moved for an order enjoining PersonalWeb from further litigation in the customer cases pending the resolution of its declaratory judgment action. (*Amazon.com*, Dkt. 15.) The motion is set for hearing on April 27, 2018. (*Id.*, Dkt. 25.) Seventeen of the customers sued in the Northern District of California have separately moved to stay their cases pending the resolution of Amazon's action.[6] Other customers who have been served by PersonalWeb filed or plan to file similar motions in other districts.

**III.   ARGUMENT**

"Centralization of any litigation—including patent cases—is not automatic, and will necessarily depend on the facts, parties, procedural history and other circumstances in a given litigation." *In re Bear Creek Techs., Inc. ('722) Patent Litig.*, 858 F. Supp. 2d 1375, 1379 (JPML 2012). Here, centralization would be improper for two reasons. First, it would conflict with the Federal Circuit's mandate that "litigation . . . brought by the manufacturer of infringing goods takes prec-

---

[6] N.D. Cal. Case Nos. 5:18-cv-00154 (Dkt. 27), 5:18-cv-00155 (Dkt. 19), 5:18-cv-00156 (Dkt. 20), 5:18-cv-00157 (Dkt. 21), 5:18-cv-00161 (Dkt. 23), 5:18-cv-00163 (Dkt. 22), 5:18-cv-00165 (Dkt. 22), 5:18-cv-00168 (Dkt. 21), 5:18-cv-00169 (Dkt. 27), 5:18-cv-00170 (Dkt. 21), 5:18-cv-00171 (Dkt. 19), 5:18-cv-00173 (Dkt. 27), 5:18-cv-00174 (Dkt. 19), 5:18-cv-00175 (Dkt. 21), 5:18-cv-00176 (Dkt. 19), 5:18-cv-00178 (Dkt. 20), 5:18-cv-00196 (Dkt. 22).

edence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463–64 (Fed. Cir. 1990). Indeed, this rule is so fundamental that declining to stay customer suits and allowing parallel and duplicative proceedings would be "a clear abuse of discretion." *In re Google Inc.*, 588 F. App'x 988, 990–92 (Fed. Cir. 2014); *see also In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365–66 (Fed. Cir. 2014). Second, centralization of these cases—when Amazon's single declaratory judgment will be dispositive of all others—would be inconsistent with the efficiency concerns that underlie the MDL statute.

### A. Federal Circuit law precludes PersonalWeb from litigating against Amazon's customers until Amazon's declaratory judgment action is resolved.

The Federal Circuit has repeatedly held that declaratory judgment actions brought by the upstream manufacturer of accused technology—like Amazon's action in the Northern District of California—must be resolved before suits against downstream customers.[7] *Katz*, 909 F.2d at 1464. This is because upstream manufacturers are the "true" defendants with the greatest interest in and ability to defend their own technology and customers:

> At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit . . . it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.

*Id.* (quoting *Codex Corp. v. Milgo Elecs. Corp.*, 553 F.2d 735, 737–38 (1st Cir. 1977)).[8] A court

---

[7] Suits brought by manufacturers take precedence over customer suits as a matter of law, even where the customer suit is first-filed. *See In re Nintendo*, 756 F.3d at 1365 (customer suit doctrine is an "exception to the 'first-to-file' rule [which] exists to avoid, if possible, imposing the burdens of trial on the customer").

[8] The customer suit doctrine dates back at least to the 1960s. *See Mattel, Inc. v. Luis Marx & Co.*, 353 F.2d 421, 424 n.4 (2d Cir. 1965) (discussing customer suit exception to first-to-file rule).

can give effect to this rule either by staying the customer suits or by enjoining the patentee from pursuing them pending the resolution of the manufacturer's declaratory judgment action. *See Katz*, 909 F.2d at 1463–64.  The rule is so well settled that the Federal Circuit has twice ordered the extraordinary writ of mandamus compelling the stay of downstream customer suits in favor of declaratory judgment suits brought by upstream suppliers. *In re Google*, 588 F. App'x 988 (Fed. Cir. 2014); *In re Nintendo*, 756 F.3d 1363.

In *In re Google*, the patent holders (collectively, "Rockstar") sued mobile phone manufacturers in the Eastern District of Texas alleging patent infringement based on the use by Google's downstream customers of Google's Android operating system.  588 F. App'x at 989.  Shortly thereafter, Google filed a complaint in the Northern District of California seeking a declaratory judgment of non-infringement so that it could remove any cloud of uncertainty over its operating system and its own branded mobile phones. *Id.*  Rockstar responded by amending its customer complaints in Texas to add Google as a defendant and moving to dismiss or transfer the California actions. *Id.*  The California district court denied that motion because Rockstar's allegations targeted Google's Android operating system, and the majority of the relevant discovery was in Northern California. *See id.*

Google and the phone manufacturers then moved to stay the customer suits in the Eastern District of Texas, which that court denied. *Id.* at 989–90.  The Federal Circuit, however, issued a writ of mandamus directing the Eastern District of Texas to stay the customer suits, explaining that the "clear" inefficiency of having parallel proceedings involving the same patents and accused products presented a "classic case for a stay":

> Given these facts, it is clear that there was no need to proceed with
> the five Texas actions because the one California action may suffice.

8

> Such circumstances present a classic case for a stay: The only potential results of adjudicating these cases in parallel fashion would be the Texas and California courts agree on the major issues of the litigation, thus producing wasteful and unnecessary litigation, or the courts disagree, thus producing conflicting decisions.

*Id.* at 990. It further found that even though the customers allegedly modified the accused operating system, and even though they were not "mere resellers" of Google technology, the cases substantially overlapped, and "staying proceedings in Texas w[ould] likely further the[] objectives [of saving litigation resources] by mooting or at least advancing the 'major premises' being litigated in the Texas actions." *Id.* at 991 (quoting *Katz*, 909 F.2d at 1464). The refusal to stay the customer suits was a clear abuse of discretion because it "frustrate[d] the comity doctrine, requiring two federal district courts and the parties to expend resources to resolve substantially similar claims and issues." *Id.* at 991–92.

The Federal Circuit issued a similar mandate in *In re Nintendo of America, Inc.* There, Secure Axcess LLC sued retailers of Nintendo's video game systems for patent infringement. 756 F.3d at 1365. The district court denied a motion to sever and stay claims against the retailer defendants and to allow Nintendo to defend its video game system against Secure Axcess's infringement claims in another court. *Id*. In response to Nintendo's petition for a writ of mandamus, the Federal Circuit vacated the district court's order and directed it to grant the motion. In so doing, it noted that "Nintendo's liability is predicate to recovery from any of the defendants, [and thus] the case against Nintendo must proceed first, in any forum." *Id*. at 1366. Similarly, here, PersonalWeb has no claim against the customers unless the California court determines that its claims against Amazon's customers are not precluded as a matter of law and it proves that Amazon's technology performs the limitations of the asserted patent claims. Amazon's liability is thus "predicate to recovery" from the customers. *Id*.

9

According to this controlling authority, Amazon's declaratory judgment action must go forward before PersonalWeb's collateral and duplicative customer suits.  The court presiding over that action will either (i) determine that PersonalWeb's claims against Amazon's customers are barred as a matter of law, which would compel dismissal of the customer suits; (ii) find that Amazon's technology—and thus any use of that technology by Amazon's customers—does not infringe, which would yield the same result; or (iii) find that Amazon infringed, and assess damages that would exhaust any separate claim for damages from the customers.  Whatever the outcome, Amazon's declaratory judgment action will resolve the customer suits.

It is irrelevant that PersonalWeb maps some claim elements to a combination of open source Ruby on Rails software with Amazon S3 for at least three reasons.  First, regardless of the architecture used to design the accused websites, PersonalWeb specifically accuses the hosting of those websites in Amazon's S3 and the functionalities of that Amazon technology.  (*See, e.g.*, Sherman Decl., Ex. 1 at ¶¶ 21–22, 56, 74.)  Second, Amazon provides its customers with software for integration of their Ruby on Rails web applications with S3, including the very content-uploading functionality that is the gravamen of PersonalWeb's complaints.  (*E.g., id.* ¶¶ 21–22, 64.)  Indeed, Amazon provides the customers with a software development kit for Ruby for use with S3 in the customers' websites.[9]  Third, PersonalWeb has told a customer who does *not* use Ruby on Rails in its accused website that it still infringes so long as it uses other comparable software with S3.  (Hadden Decl., Ex. 3.)

And yet even if PersonalWeb could somehow amend its complaints to add a theory that

---

[9] Amazon is indemnifying and defending its customers against all PersonalWeb's claims asserted against them including based on any combination of Ruby on Rails and S3.  (*See* Hadden Decl., Ex. 9 (FAC) at ¶¶ 8, 32-33.)

did not implicate Amazon technology, a stay of the customer suits would still be required because the declaratory judgment action would nevertheless resolve the major issues in those suits. For example, in *Pragmatus*, the patentee argued that suits against LivePerson's customers should not be stayed because "the [c]ustomers use [additional], non-LivePerson technology for their infringing systems and therefore the action against the [c]ustomers will not be resolved by the LivePerson action." *Pragmatus Telecom, LLC v. Advanced Store Co.*, No. 12-088-RGA, 2012 WL 2803695, at *4 (D. Del. July 10, 2012). The Delaware court rejected that argument because "[a]s the Federal Circuit noted in *Katz* . . . the manufacturer's case need only promise to resolve the 'major issues' concerning the claims against the customer, and not every conceivable issue." *Id.* Here too PersonalWeb's customer suits must be stayed because Amazon's declaratory judgment action in California will resolve the "major issues" in the customer suits. *See also Google*, 588 F. App'x at 990 (granting stay of customer suits even though phone manufacturers allegedly modified Google operating system); *Finisar Corp. v. Cheetah Omni, LLC*, No. 11-cv-15625, 2012 WL 12931575, *5-6 (E.D. Mich. Nov. 19, 2012) (granting stay over objection that customer suits involved additional patent claims).

      The purpose of the customer suit doctrine is to avoid "a redundancy of litigation on some of the issues involving [all] . . . parties," thus "'prevent[ing] multiplicity of actions . . . to achieve resolution in a single lawsuit of all disputes arising out of common matters.'" *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) (quoting *S. Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962)), *overruled on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)). Consolidation would frustrate the Federal Circuit's goal of avoiding such duplicative litigation, as the cases would proceed in a parallel (even if somewhat coordinated) fashion and would still have to be resolved in more than 50 trials around the country.

**B.     Staying the customer suits here will resolve this dispute more efficiently than transfer, which would thwart the purposes of the MDL statute by unnecessarily complicating the proceedings and wasting judicial resources.**

Contrary to PersonalWeb's assertion, centralization and consolidation of pretrial proceedings here would not "maximize efficiency of the PersonalWeb patent litigation."[10] (Mot. at 2.) To the contrary, centralization would be inefficient, and, in all events, would be an abuse of discretion.

In *Google*, the patentee argued that the Texas district court properly declined to stay the customer cases based, *inter alia*, on its determination that the customer cases could be consolidated for purposes of resolution of common issues of claim construction, damages, and invalidity. (Hadden Decl., Ex. 10 at 29.) In granting the writ of mandamus, the Federal Circuit made clear that forcing the suits to proceed in parallel was an "obvious waste of resources" and an abuse of discretion:

> Given the convenience of the Northern District of California and benefits of staying the Texas proceedings, it makes no difference whether it would have been easier to consolidate all of the actions in Texas, as suggested by the Eastern District of Texas in its practical problems analysis. That reasoning simply ignores the justifications for a stay and cannot, in our view, sustain the obvious waste of resources inherent in allowing both actions to proceed in parallel fashion.

*Google*, 588 F. App'x at 991–92. The same reasoning applies with full force here. An MDL proceeding would waste resources inherent in allowing over 50 actions to proceed, including potentially crushing discovery disruptions for a host of small and hard-working companies, when

---

[10] The panel does not even "dictat[e] the structure of an MDL's pretrial proceedings" and "instead [] leave[s] the degree of coordination or consolidation of involved actions to the sound discretion of the transferee judge." *In re Bear Creek Techs.*, 858 F. Supp. 2d at 1377. If PersonalWeb is truly concerned with efficiency, it could consent to a stay of its more than 50 cases while Amazon's declaratory judgment case goes forward. At a minimum, Amazon's action will decide whether PersonalWeb has a claim to assert in the first place.

only Amazon's single declaratory judgment action is necessary to resolve the dispute. Imposing disruptions on small customers to extract nuisance settlements (and thereby fund its litigation campaign against larger customers) is, in fact, the primary purpose of PersonalWeb's customer suits, and is the main reason why PersonalWeb invokes MDL proceedings in which it hopes to preserve an opportunity to extract settlements, albeit centralized, against Amazon customers.

PersonalWeb agrees that questions of claim construction, infringement, invalidity, and damages should be decided in a single case rather than in separate suits. (Mot. at 10–14.) The only way to achieve this while remaining faithful to binding Federal Circuit law is to stay the customer suits and resolve Amazon's declaratory judgment claims—not to create an MDL that may ultimately require more than 50 separate trials scattered across the country. *See* 28 U.S.C. § 1407(a) (centralization limited to pretrial proceedings); *see In re Bear Creek Techs.*, 858 F. Supp. 2d at 1378 (confirming that "the separate nature of actions transferred to an MDL is preserved throughout each action's pendency.") Indeed, the purpose of the MDL statute—efficient resolution of common issues—would be better served by Amazon's declaratory judgment action than by an MDL. That action will resolve the common dispositive fact issues. *See* 28 U.S.C. § 1407. It will also resolve the common dispositive legal issues. It will eliminate the possibility of inconsistent rulings. *See, e.g., In re Desloratadine Patent Litig.*, 502 F. Supp. 2d 1354, 1355 (JPML 2007) (noting goal of preventing inconsistency in claim constructions). It will not require the participation of over 50 additional parties. And it will do so within the legal framework provided by the Federal Circuit.[11]

---

[11] Contrary to PersonalWeb's suggestion, whether PersonalWeb's abusive customer cases meet the AIA standard for joinder does not justify consolidation under the MDL rules. (*See* Mot. at 13.) The panel has already considered the relationship between the MDL statute and the AIA joinder statute and concluded that they "operate under decidedly different standards." *In re Bear*

The burden and expense the parties and the panel have already endured as a result of PersonalWeb's request for centralization is just one example of the inefficiencies to be created by an MDL. Each defendant party to this proceeding has had or will have to appear and file a corporate disclosure statement (JPML Rules 4.1(c), 5.1); respond to PersonalWeb's transfer motion (Rule 6.1(c)), serve courtesy copies on the clerk (Rules 3.2(a)(iii), 3.2(d)); review PersonalWeb's reply (Rules 6.1(d), 3.2(a)(iii)); file a statement regarding oral argument, if desired (Rule 11.1(b)); notify the panel of intent to make or waive argument if set (Rule 11.1(d)); confer with all other parties regarding presentation of argument (Rule 11.1(e)); and travel with counsel to a hearing, presumably in Chicago, Illinois.

The panel itself must decide whether to hold the hearing and notify counsel of that decision, and then rule on the motion to transfer following review of the extensive briefing. If the panel grants the transfer PersonalWeb has requested, its clerk must notify the Northern District of California clerk, who will then file the order in each transferor court. In turn, each transferor court will need to transmit its record and close its file. (JPML Rule 9.1(a).) PersonalWeb has also threatened (but not yet filed) an unspecified number of potential tag-along actions, for which it must notify the panel and seek a conditional transfer order, or for which the panel may issue show cause orders on its own; either option potentially requires additional briefing and a hearing. (Rules 7.1, 8.1.) And because of the Federal Circuit's clear directive to district courts, all of this effort will be for

---

*Creek Techs.*, 858 F. Supp. 2d at 1378–79. It reiterated: "Centralization of any litigation—including patent cases—is not automatic, and will necessarily depend on the facts, parties, procedural history and other circumstances in a given litigation." *Id.* (citing *In re CVS Caremark Corp. Wage and Hour Employment Pracs. Litig.*, 684 F. Supp. 2d 1377, 1379 (JPML 2010). Here, the most pressing circumstance is that PersonalWeb brought duplicative customer cases that must be enjoined or stayed under controlling law. The AIA joinder rules do not provide any relevant guidance for such cases, let alone determine how the panel should rule.

14

nothing, as the customer suits will be stayed.[12]

An MDL centralization here is both unnecessary and inefficient as Amazon's single declaratory judgment action can resolve all of PersonalWeb's customer cases. The most efficient course—and the only one allowed under controlling black letter Federal Circuit law—is staying the 50 plus customer suits. Allowing them to proceed, centralized or not, would not "promote the just and efficient conduct of such actions." (§ 1407(a).) PersonalWeb's request that the panel do what it has never done before—order centralization of customer suits in the face of requests to stay those duplicative suits under the customer suit doctrine[13]—should be denied.

## IV. CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court deny PersonalWeb's motion to transfer its pending patent litigations and any tag-along cases to the Northern District of California for coordination or consolidation of pretrial proceedings.

If the panel is inclined to order transfer, however, it should transfer to the district judge in the Northern District of California that currently presides over Amazon's declaratory judgment action and twenty-six customer cases. The panel should select that forum not because of its past

---

[12] Further, regardless of the outcome of Amazon's motion for preliminary injunction, either side may (and likely will) immediately appeal that decision to the Federal Circuit. *See Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1328–31 (Fed. Cir. 2004) (anti-suit injunction order subject to immediate appellate review); 28 U.S.C. § 1292(a)(1). PersonalWeb's customer suits should and would likely be stayed during the pendency of any such appeal as well, meaning centralization would have served no purpose.

[13] The panel has ordered centralization of customer suits in only three instances. In two of these cases, the customer defendants or the manufacturer consented to transfer. *In re Mobile Telecomms. Techs., LLC Patent Litig.*, 222 F. Supp. 3d 1337 (JPML 2016); *In re FMC Corp. Pat. Litig.*, 422 F. Supp. 1163, 1164 (JPML 1976). In the third case, not all parties opposed centralization, and those that did failed to rely on or even raise the customer suit doctrine in their opposition to the motion to transfer. *See In re Method of Processing Ethanol Byproducts & Related Subsystems, ('858) Pat. Litig.*, 730 F. Supp. 2d 1379 (JPML 2010); *see also* Hadden Decl., Ex. 11. Thus, the panel has never fully considered the issues raised in this case, and the relief PersonalWeb seeks—which necessarily requires flouting Federal Circuit law—is unprecedented.

experience applying claims of some asserted patents to different technology, but to minimize any interference with the relief Amazon and its customers have already sought there under well-established Federal Circuit law.

Dated:  April 4, 2018

By:  */s/J. David Hadden*
J. David Hadden
dhadden@fenwick.com
Saina S. Shamilov
sshamilov@fenwick.com
Todd R. Gregorian
tgregorian@fenwick.com
Phillip J. Haack
phaack@fenwick.com
Chieh Tung
ctung@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, California 94041
Telephone:  (650) 988-8500
Facsimile:   (650) 938-5200

*Attorneys for Declaratory Judgment Plaintiffs Amazon.com, Inc. and Amazon Web Services, Inc.*